FORBES S. ADAM *v.* LOUIS C. CONSOLINI ET AL.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, JS.

Argued December 8, 1948—decided February 1, 1949

*Charles P. Roraback,* with whom was *J. Clinton Roraback,* for the appellants (defendants).

*David Cramer,* with whom were *Sully I. Berman* and, on the brief, *Clayton L. Blick.*

MALTBIE, C. J.   In this action the plaintiff sought a declaratory judgment that a written lease he held of

the defendants' property had been extended. The defendants contended that there had been no written notice of extension as provided in the lease. The trial court held that notice had been waived and rendered judgment declaring that the lease had been extended. From this judgment the defendants have appealed.

The trial court found the following facts: On March 17, 1937, the plaintiff and the defendants' predecessor in title executed a lease of the property in suit for a term of ten years from April 1, 1937. The lease contained provisions that the lessee had the right to extend the term for a further period of ten years by giving written notice of his intention to do so within sixty days of the termination of the lease, that after default made in any of its covenants acceptance of rent or failure to re-enter by the lessor should not be held to be a waiver of the lessor's right to terminate the lease, and that the lessee waived demand and notice as a prerequisite for obtaining possession. The defendants acquired the property in January, 1945, and some time thereafter the plaintiff started paying the rent three months in advance instead of monthly in advance as provided in the lease. On or about January 3, 1947, the plaintiff sent the defendants a check for $150 in payment of the rent for the months of January, February and March, the last three months of the original term of the lease. The check was not cashed by the defendants until February 18, 1947. On or about February 1, 1947, the plaintiff called Sophia B. Consolini, one of the lessors, on the telephone, inquiring why she had not cashed the check, and during the conversation asked her if the present arrangement of paying the rent three months in advance was agreeable to her and if she would be satisfied if he continued to follow this method in the future. She replied in the affirmative. He did not actually

state to Mrs. Consolini that he proposed to exercise his right to extend the term of the lease, but in speaking of future payments of rent he was referring to the rent which would be due under the extended term and Mrs. Consolini so understood him, and her affirmative reply was based on that understanding. This conversation took place within sixty days of the termination of the original lease. On or about April 1, 1947, the plaintiff sent his check for $150 to the defendants, intending it as payment in advance for the first three months of the extended term. The check was received by the defendants, accepted and cashed by them as payment for the first three months of the extended term. On June 2, 1947, the plaintiff sent a letter to the defendants, in order to have a written record of the understanding between the parties as to the extended term, in which he confirmed his intention of extending the lease. This was the only written notice given by him. On or about June 25, 1947, the plaintiff sent the defendants a check for $150, covering rent for the months of July, August and September, 1947. This check was not accepted by the defendants but was returned with a letter in which they stated that they considered the original lease terminated because of failure of the plaintiff to give written notice of his intention to extend the term within the time limited by the lease.

The only attacks that the defendants make on the finding are that the trial court found without evidence that during the telephone conversation the plaintiff, in speaking of future payments of rent, referred to rent which would be due under the extended term, that Mrs. Consolini so understood him, that her affirmative reply was based on that understanding, and that the plaintiff's intention in sending the check of April 1, 1947, was to pay in advance for the first three months of the extended term and was received, accepted and

cashed by the defendants as payment for this period. The plaintiff testified that the check of April 1, 1947, was sent in payment for the months of April, May and June, 1947. It was received after the telephone conversation. The plaintiff was asked if he discussed, in that conversation, anything about the future with Mrs. Consolini and answered that he had asked her if the arrangement of paying three months in advance in the future was satisfactory and she had answered in the affirmative. The "future" must have referred to a time beyond the termination of the original lease, for at the time of the conversation payment of rent in full had been made under that lease. The defendants argue in their brief that "they were not required to read the plaintiff's mind" and that there was no evidence that they knew the expiration date of the lease at the time they accepted the check. They bought the property subject to the lease and accepted rent from the plaintiff under it after January 3, 1945. Neither of the defendants testified at the trial. In the absence of other facts they cannot take the position that they had not read the lease or, having read it, had forgotten its provisions. The law conclusively imputes to Mrs. Consolini, when she had the conversation with the plaintiff, knowledge of the terms of the lease. *Fitzpatrick* v. *Hartford Life & Annuity Ins. Co.,* 56 Conn. 116, 128, 13 A. 673, 17 A. 411; *Ursini* v. *Goldman,* 118 Conn. 554, 562, 173 A. 789. This is a "most wholesome and necessary rule"; *West* v. *Suda,* 69 Conn. 60, 62, 36 A. 1015; otherwise it would lay open to a party to a contract entirely too wide a field for a denial of knowledge, disproof of which would in many cases be impossible. The finding cannot be corrected. The requirement of a written notice of the exercise of the option was for the benefit of the lessors and could be waived by them orally or by conduct. *Johnson* v.

*Mary Oliver Candy Shops, Inc.,* 116 Conn. 86, 90, 163 A. 606; *Wood* v. *Edison Electric Illuminating Co.,* 184 Mass. 523, 527, 69 N. E. 364; 2 Underhill, Landlord & Tenant, p. 1379; 32 Am. Jur. 823, § 980; see *Segal* v. *Gagliardi,* 103 Conn. 497, 502, 130 A. 896. The trial court could reasonably reach the conclusion that the requirement had been waived.

The defendants in their argument referred to but did not stress the provision in the lease that after default made in any of its covenants acceptance of rent or a failure to re-enter should not be held to be a waiver of the lessor's right to terminate the lease. The very words of this provision, "right to terminate the lease," show that it was intended to apply to a breach of a covenant in an existing lease, not to a failure to give notice of an intention to extend its term. Moreover, it is intrinsic in the word "covenant" that it contain a promise, express or implied, or at least a stipulation that certain facts are true. 1 Underhill, op. cit., p. 599; 21 C. J. S. 883. The plaintiff had merely an option to obtain an extension of the lease conditioned upon his giving the prescribed notice. The provision giving him that option contained no direct or implied promise by him and no stipulation of the truth of any facts. By his failure to give the prescribed notice he was guilty of no breach of covenant. The provision in the lease concerning waiver could not apply to prevent a waiver of that failure.

There is no error.

In this opinion the other judges concurred except DICKENSON, J., who concurred in the result.