[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff landlord brought this action for damages against a corporate defendant (NEDA Enterprises) and two individual defendants. The action arose out of a written lease for commercial property at 461 Blue Hills Avenue, Hartford and sought damages for unpaid rent, damages to the property and attorney's fees. The corporate defendant ("NEDA") was sued as the tenant on the lease, and the individual defendants were sued solely in their capacity as signers of the guaranty attached to the lease. Prior to trial, the plaintiff withdrew the action against the corporate defendant NEDA.
It is undisputed that the lease between the plaintiff and NEDA was signed by the defendant Neville Gooden as President of NEDA. It is also undisputed that the term of the lease was five years beginning March 1, 1985 and that it contained an option to renew for an additional five years. (Exhibit 1) Finally, it is not disputed that NEDA vacated the premises sometime in September 1993.
The dispositive issues framed by the pleadings and presented through the evidence are 1) whether the lease was renewed, and 2) whether the defendants are liable as guarantors even if the lease was not renewed. I
 A
The provision regarding the option to renew reads in pertinent part as follows:
 4. OPTION TO RENEW. The Lessor grants unto the Lessee an option to renew this lease for one (1) additional five (5) year term, which option shall be exercised by the Lessee giving written notice to the Lessor of Lessee's intention to extend or renew this lease not later than one hundred eighty (180) days prior to the expiration of the original term of this lease. Said CT Page 737 renewal shall be upon the same terms, covenants and conditions contained within in this Lease, except that the basic rent shall be increased as hereinafter set forth:
(Exhibit 1, p. 2)
The only documentation introduced into evidence regarding this provision is Exhibit 2, a 12/20/89 letter from the defendant Neville Gooden on behalf of NEDA suggesting changes to the lease and proposing an increased rent amount. The letter also contains the following language: "Please peruse its contents and return said document with your changes/approval preferably by December 31, 1989. At the end of our exchanging ideas, we can then have a new document typed up ready for signing." The plaintiff testified that he made no written response. Subsequent to the expiration of the original lease term, the defendant paid an increased rent of $1723.50. The plaintiff testified that he did not agree to that rent, and in fact his complaint sets forth an amount of $2,000 that was due as monthly rent.
Despite the fact that the defendant did write to the plaintiff setting forth an offer regarding a renewal of the lease and did increase his rent payments, the court finds that no new lease under the option to renew was formed between the parties. See David A. Altschuler Trust v. Blanchette, 33 Conn. App. 570,573-574 (1994). There was no agreement by the parties regarding the amount of rent due under the new lease and the offer was untimely under the lease provision.
Accordingly, the plaintiff has failed to prove paragraph four of his complaint, and NEDA was a tenant on a month to month basis after March 1990.[1]
 B
The guaranty signed by the defendants (Exhibit 1, final page) reads:
 GUARANTY given by NEVILLE B. GOODEN and DANA M. GOODEN to MICHAEL SPONZO d/b/a T S REALTY on January 28, 1985.
 In consideration of the letting by MICHAEL SPONZO d/b/a T S REALTY, as lessor, of the premises located at 461 CT Page 738 Blue Hill Avenue, Hartford, Connecticut, to NEDA ENTERPRISES, INC., as lessee, under a certain lease dated January 28, 1985, we the undersigned jointly and severally agree with the lessor that if default shall at any time be made by the NEDA ENTERPRISES, INC. in the payment of rent or in the performance of any other covenants contained in the lease, the undersigned will pay to the lessor, his personal representatives, or assigns the rent due and any arrears, and all damages that may arise in consequence of any default by the lessee under the lease, on receipt of written notice of such default from the lessor, his personal representatives, or assigns. [This Guaranty shall be a continuing Guaranty, and the liability hereunder shall in no way be affected or diminished by reason of any extension of time that may be granted by the lessor to the lessee.]*
The defendants argue that since the lease was not renewed, the guaranty expired. The plaintiff argues that the guaranty continued throughout the holdover tenancy.
While the court has been unable to find any Supreme or Appellate case law discussing a continuing guaranty in the context of a lease, there are cases discussing it in other commercial contracts. Since a lease is a contract and since in this case we are dealing with a commercial lease, it is appropriate for the court to rely on such authority for interpreting this continuing guaranty. See Rokalor, Inc. v. Connecticut Eating Enterprises,Inc., 33 Conn. App. 384, 391 (1989).
As with other contract provisions, the interpretation of a continuing guaranty is principally a question of fact as to the intention of the parties. Monroe Ready Mix Concrete Inc. v.Westcor Development Corp. , 183 Conn. 348, 351 (1981). A continuing guaranty is one where the parties intended "a future course of dealing during an indefinite period or it is intended to cover a series of transactions or a succession of credits, or if its purpose is to give to the principal debtor a standing credit to be used by him from time to time." Associated CatalogMerchandisers, Inc. v. Chagnon, 210 Conn. 734, 742 (1989). Here, by the language of the guaranty, the parties intended that the guaranty continue through "any extension of time that may be granted by the lessor to the lessee." It seems clear to the court that the parties intended the guaranty to continue throughout the CT Page 739 tenancy of NEDA at the subject premises. The defendant Neville Gooden, who was the president of NEDA, testified that he operated a pharmacy at the subject premises throughout the tenancy. While the lease expired prior to the end of the tenancy (see Part I A), the guaranty by its language was continuing.
Further, "[a]n offer for a continuing guaranty is ordinarily effective until revoked by the guarantor or extinguished by some rule of law." Associated Catalog, supra, 210 Conn. 742. There was no testimony or evidence that the defendants here revoked the guaranty. Accordingly, the court finds that the guaranty signed by the defendants continued through the holdover tenancy.
This finding is supported by additional language inAssociated Catalog, supra. "However, `[e]ven a continuing guaranty, that is, in terms, unlimited as to duration, imposes liability upon a guarantor only for such period of time as is reasonable in light of all the circumstances of the particular case." 210 Conn. 742-743. The period of holdover tenancy of NEDA is a reasonable period of time to have this guaranty continue. Accordingly, the defendants are liable as guarantors from March 1990 through September 1993.
 II
The plaintiff claims damages for back rent for 16 months, from May 1992 through September 1993, at a rate of $1723.50,[2] as well as rent for the unexpired term of the renewed lease. In light of the finding in part I A of this decision, the court does not address the latter claim. The court finds that the plaintiff has proven his claimed damages for back rent. The court further finds that the plaintiff has failed to meet his burden of proof as to the claims for property damage. Finally, as to the claims for attorney's fees under the lease, the court finds that since the lease expired prior to the nonpayment of rent and since the holdover provision does not incorporate the attorney's fees lease clause (see footnote 1), the plaintiff cannot recover attorney's fees.
Judgment may enter in favor of the plaintiff in the amount of $27,576.00, plus costs.
Alexandra Davis DiPentima, Judge